UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


**HARTMAN & TYNER, INC.,**

       Plaintiff,

v.                            CASE NO. 08-12461
                              HONORABLE DENISE PAGE HOOD

**FEDERAL INSURANCE CO.,**

       Defendant.

_____/

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DISMISSING ACTION**

**I.     INTRODUCTION**

This matter is before the Court on the parties' cross Motions for Summary Judgment, both filed on December 8, 2008. Both parties have filed Responses and Replies to the opposing party's Motion for Summary Judgment.[1] *See* Doc. Nos. 15-18. After review of the parties' motions and opposing briefs, this Court concluded that oral argument was unnecessary. *See* E.D. L.R. 7.1(e)(2).

**II.    STATEMENT OF FACTS**

On June 9, 2008, Defendant, Federal Insurance Company, Inc. ("Federal") removed this breach of contract action from the Circuit Court for the County of Oakland, Michigan pursuant to

---

[1] On June 24, 2009, Plaintiff submitted a Supplemental Brief and Affidavit Regarding New Evidence in Support of its Motion for Summary Judgment. On August 4, 2009, Defendant filed a Response to Plaintiff's Supplemental Brief in Support of its Motion for Summary Judgment.

-1-

28 U.S.C. §§ 1332 and 1441.[2]  Plaintiff, Harman & Tyner, Inc. ("Hartman") alleges that Federal breached its obligations under a commercial crime insurance policy ("Policy") by failing to indemnify it for certain losses resulting from an embezzlement scheme by one of Hartman's employees, Hanna Dallo.  The main issue before the Court involves the parties dispute over the interpretation of the Policy's limits of liability provision.

The underlying facts are not dispute.  Hartman is in the business of owning and/or managing approximately thirty-three (33) rental apartment complexes in Wayne and Oakland counties.  Federal issued a crime policy of insurance, number 8127-9576, insuring Hartman for a term of April 1, 2007 through April 1, 2008 for employee theft, and other coverage.  The applicable provision states:

> The Company shall pay the Parent Corporation for direct loss sustained by an Insured resulting from Theft or Forgery committed by an Employee acting alone or in collusion with others.

*See* Plaintiff's Mot. for Summ. J., Ex. 13, Policy, Insuring Clause I.(A).  Under the 'Limits of Liability' section, the Policy states:

> (C)   All loss resulting from a single act or any number of acts of the same Employee or Third Party, and all loss whether such act or acts occurred before or during the Policy Period, will be treated as a single loss and the applicable Limit of Liability of this Coverage Section will apply, subject to Section VII for Prior Losses.

*Id.*, VIII(C). The limit of liability shown for each insuring clause A, or 'Employee Theft' is $1,000,000.00.  *Id.*, Item 2.  Hartman also purchased under the Policy, for an additional premium, Optional Loss Sustained Coverage for Prior Losses which covers loss sustained, but not discovered, prior to the inception date of coverage under the Policy.  This provision states that:

---

[2] There is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

>   (1)   Coverage will be available for loss sustained prior to the inception date of this Coverage Section, . . . subject to the following:
>
>   >   (a)   an Insured . . . carried a prior bond or policy which afforded coverage for a loss sustained during the period of such prior bond or policy;
>   >   (b)   such coverage continued without interruption from the time such loss was sustained until the inception date or effective date specified in paragraph (1) above;
>   >   (c)   such loss was first Discovered by an Insured after the time allowed for discovery under the last such policy; and
>   >   (d)   some or all of the coverage on an Insuring Clause under this Coverage Section would be applicable to the prior loss;
>
>   \*                                    \*                                    \*
>
>   (3)   the Insured shall neither be entitled to a separate recovery under each policy in force at the time any part of the prior loss was sustained, nor shall the Insured be entitled to recover the sum of the limits of liability of any such policies. The Company's maximum liability for the prior loss shall not exceed the lesser of either the limit of liability of the policy immediately preceding this Coverage Section under which part of the prior loss was sustained, or the applicable Limit of Liability as set forth in the Declarations of this Coverage Section.

*Id.*, Sec. VII(A). The Policy also covered investigation fees and costs up to $10,000.00 per loss.

On or about August 27, 2007, Hartman received an anonymous letter indicating that one of its employees, Hanna Dallo, and contractors to Hartman, Youssef Fakih and USA Construction Company ("U.C.") were embezzling funds from Hartman and had been doing so for some time. Hartman conducted its own investigation and discovered that Ms. Dallo, Hartman's Accounts Payable Supervisor, and Mr. Fakih, principal shareholder of U.C. and USA Holding, L.L.C. ("U.H.") had embezzled and stolen over $4,600,000.00 from Hartman since at least 2003.

The thefts and embezzlement were achieved by the creation of phony purchase orders by Ms. Dallo. Phony matching invoices were then created for U.C., for work which was never performed. Ms. Dallo would then forge the signature or initials of Hartman's Supervisor of Maintenance and,

as Accounts Payable Supervisor, had checks prepared to be issued to U.C. and U.H. for the work and then submitted the checks to Hartman's Treasurer, Julie Ala, or Vice President, Dan Adkins, for signature. Ms. Dallo sent the checks to U.C. and U.H., which deposited the funds into bank accounts, from which Ms. Dallo, Mr. Fakih and Dallo's brothers, Laith and Faraj Dallo, then received funds. Because U.C. and U.H. did a considerable amount of legitimate work, and the fraudulent purchase orders and invoices were hidden among many legitimate orders and invoices over the years, Hartman did not discover the scheme until it received the anonymous letter. Hartman filed a civil suit against the conspirators in the Circuit Court for the County of Oakland to recover the stolen funds. As a result, criminal charges were issued against both Ms. Dallo and Mr. Fakih.

Hartman hired a forensic accounting firm, Doeren[3] Mayhew, & Company, to investigate the extent of its losses. This investigation concluded that $4,618,112.52 had been stolen or embezzled. Federal later retained its own investigator, Andy Svinick of Peters and Associates, L.L.P., who concurred with the findings of Hartman's investigator.

In addition to contacting the Southfield Police Department, Hartman also submitted a claim to Federal on August 29, 2007. In response, on September 13, 2007, Federal sent a letter to Hartman indicating the types of documentation it would need to verify the amount of Hartman's loss and right to recover under the Policy, among other things. On October 18, 2007, Hartman attached samples of the source documents, such as, phone purchase orders and invoices and offered to have Federal review all the source documents which consisted of approximately fifteen banker boxes, rather than

---

[3] The parties spell this company's name differently throughout their briefs. The Court will spell it the same way that Bruce Knapp, Director of the company and the individual who completed the investigation for Hartman, spells it in his September 28, 2007 Affidavit. *See* Plf.'s Mot. for Summ. J., Ex. 4.

copy and mail everything to Federal. Additionally, Hartman offered to supply Ms. Dallo's personnel file, as requested by Federal, on the condition that Federal enter into a confidentiality agreement and subject to Michigan and Federal law restrictions on the items that may be produced during discovery. Hartman's Proof of Loss contained affidavits of Julie Ala, Tom Cianciolo, Supervisor of Maintenance and Construction, and Bruce Knapp, the forensic accountant hired to investigate the loss, which included his spreadsheets documenting the specific amount of the loss in excess of $4.6 Million. Federal did not respond in writing until January 4, 2008. On that date, David D. Pardini, Fidelity's Claims Attorney,[4] sent a letter to Hartman regarding its Proof of Loss submission. In this letter, Mr. Pardini indicated that due to the voluminous documentation and length of time involved that it had retained a forensic accountant, Andrew Svinicki of Peters & Associates to facilitate the investigation of the matter. Mr. Pardini also indicated that Federal was willing to enter into a confidentiality agreement for the provision of a copy of Ms. Dallo's personnel file.[5]

On January 25, 2008, Hartman produced the electronic data files to Federal and made the physical records substantiating the loss available the next day. After the parties went through various drafts, a confidentiality agreement was entered into on February 19, 2008, and Ms. Dallo's file was produced the following day. On April 10, 2008, Federal paid Hartman $1,000,000.00 for the loss sustained by Hartman, as Federal had previously indicated that it considered the $4,618,112.52 embezzled funds to be a single loss under the Policy, and that the prior loss coverage

---

[4] Fidelity is a division of Federal.

[5] The letter also indicated Federal's position that the insured is not entitled to separate recovery under each prior policy (Hartman had prior polices with Federal extending back to April 1, 1999) and that Hartman's loss is a 'single loss' under the Policy subject to the $1,000,000.00 limit of liability provision.

was included within the Policy and not in addition to it. Hartman's Complaint raises the following claims: Count I, Breach of Contract: Prior Loss Coverage; Count II, Breach of Contract: Additional Losses and Investigation Costs; Count III, Penalty Interest as Additional Damages Pursuant to MICH. COMP. LAWS § 500.2006.

### III.   APPLICABLE LAW & ANALYSIS

#### A.   Standard of Review

Pursuant to Federal Rule of Civil Procedure Rule 56(c), summary judgment may only be granted in cases where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." The moving party bears the burden of showing no dispute as to any material issue. *Equal Employment Opportunity Comm'n v. MacMillan Bloedel Containers, Inc.*, 503 F.2d 1086, 1093 (6th Cir. 1974). A dispute must be evident from the evidence in order to deny such a motion. Such a dispute must not merely rest upon the allegations or denials in the pleadings, but instead must be established by affidavits or other documentary evidence. *See* Fed.R.Civ.P. 56(e). When ruling, the Court must consider the admissible evidence in the light most favorable to the non-moving party. *Sagan v. United States of Am.*, 342 F.3d 493, 497 (6th Cir. 2003).

#### B.   Cross Motions for Summary Judgment

"In Michigan, courts construe insurance policies in the same manner as other contracts." *Fed. Ins. Co. v. Hartford Steam Boiler Inspection & Ins. Co.*, 415 F. 3d 487, 495 (6th Cir. 2005).[6]

---

[6] This Court must apply Michigan substantive law to resolve the parties' dispute. *See Biegas v. Quickway Carriers, Inc*., 573 F. 3d 365, 374 (6th Cir. 2009) (*Erie* doctrine requires federal courts sitting in diversity to apply the substantive law of the forum state.)

The primary goal of contract interpretation is to honor the intent of the parties. *See Tenneco Inc. v. Amerisure Mut. Ins. Co.*, 281 Mich. App. 429, 444; 761 N.W. 2d 846 (2008). "If the provisions of a policy are clear and unambiguous, the court applies the terms in their plain, ordinary and popular sense." *Fed. Ins. Co.*, 415 F.3d at 495. If the contract is unambiguous it must be enforced as written. *Id.* Whether or not an ambiguity exists is a question of law for the court to resolve. *Id.* In order to determine whether an ambiguity exits, courts "must give effect to every word, phrase, and clause in a contract and avoid an interpretation that would render any part of the contract surplusage or nugatory." *Laurel Woods Apts. v. Roumayah*, 274 Mich. App. 631, 638; 734 N.W. 2d 217 (2007).

It is Hartman's contention that under the Policy a loss is defined as the loss resulting from the acts of each employee and each third party. As such, based upon the acts of Dallo, U.C. and Fakih, there are at least three losses with an applicable $1,000.000.00 limit of liability. Hartman further asserts that under the 'Prior Loss' coverage, Hartman is entitled to a $1,000.000.00 limit of liability for loss sustained in prior years. Hartman also asserts that it is entitled to penalty interest under MICH. COMP. LAWS § 500.2006 due to Federal's failure to pay on Hartman's claim within the requisite sixty (60) days set forth in the statute. Lastly, Hartman argues that it is entitled to $10,000.00 for forensic investigation fees payable under the Policy.

Hartman's interpretation of the subject Policy is flawed. The Policy unambiguously defines what is considered a 'single loss' under the Policy: "all loss resulting from a single act or any number of acts of the same Employee or Third Party, and all loss whether such act or acts occurred before or during the Policy Period, will be treated as a single loss and the applicable Limit of Liability of this Coverage Section will apply." Plf.s' Mot. for Summ. J., Ex. 13, VIII(c). As Ms.

Dallo was intregral to the embezzlement scheme, without her involvment, it could not have been carried out, there is only a single loss under the terms of the Policy. In other words, because the loss resulted from the acts of the same employee, Dallo, Hartman's loss is considered a 'single loss' subject to the $1,000,000.00 limit of liability. The Sixth Circuit addressed this issue in the unpublished opinion of *Dilley, Dewey & Damon, P.C. v. St. Paul Fire and Marine Insurance Co.*, No. 89-1082, 1989 U.S. App. LEXIS 16185 (October 24, 1989)**.**

In *Dilley*, the insured sought recovery from a commercial crime policy when its employee embezzled a total of $53,212.97 during a four-year period. *Id.* at *2. The *Dilley* court rejected the insured's argument that the insurer was obligated to pay more than the $25,000.00 limit of liability set forth in the applicable crime insurance policy. *Id.* at *4. The policy in *Dilley* expressly stated that "all loss caused by" an employee was subject to a single limit of liability, as such the Sixth Circuit found that "recovery is limited to the maximum coverage ($25,000.00) provided by the current contract." *Id.* Hartman is not entitled to recovery beyond the $1,000,000.00 limit of liability because the Policy states "all loss resulting from a single act or any number of acts of the same Employee or Third Party . . . will be treated as a single loss and the applicable Limit of Liability of this Coverage Section will apply."

The term "'all' should be given its ordinary and natural meaning and connote the broadest possible classification leaving no room for exceptions." *West Branch Tank v. Searfross*, No.194399, 1998 Mich. App. LEXIS 2478, *10 (March 10, 1998). As such, all loss resulting from Ms. Dallo's acts is a single loss under the express language of the subject Policy. Hartman has maintained, in its civil complaint filed against Dallo, and in the present matter, that all of its loss is attributed to its former employee, Hanna Dallo, as she was the common element in every transaction which resulted

in the loss suffered by Hartman. *See* Def.'s Mot. for Summ. J., Ex. C, ¶¶ 11, 34-36; Ex. D, Dep. Tr. of Julie Ala, Chief Financial Officer of Hartman, pgs. 27, 40-43); *see also,* Ex. B. Hartman cites no case law in support of its contention that the language 'same employee or third party' means that if there are multiple individuals involved in the same scheme, then there are multiple losses. *See* Plf.'s Mot. for Summ. J., at 19. If the loss results from acts perpetrated by Dallo, it is subject to a single limit of liability. *Dilley*, 1989 U.S. App. LEXIS 16185 at *2.

In *Omne Services Group, Inc. v. Hartford Insurance Co.*, 2 F. Supp. 2d 714, 715 (E.D. Penn. 1998), the insured held a commercial crime policy for monetary loss due to employee dishonesty, with a limit of insurance coverage to $100,000.00 per occurrence. *Id.* The insured's employee committed fraud upon the company in a scheme involving third-parties who were not employed with the insured. *Id.* at 718-19. The insured argued that the insurer had breached the parties' agreement because it had not paid for the total losses suffered, a sum in excess of $600,000.00, claiming that the scheme was a single occurrence under the crime policy and subject to the $100,000.00 limit of liability. *Id.* at 715. The provision at issue, similar in many respects to the provision at issue herein, defined 'occurrence' as: "all loss caused by, or involving, one or more employees, whether the result of a single act or series of acts." *Id.* at 719. The district court concluded that "[b]ecause Omne has claimed that the employee dishonesty of [one of its employees] 'acting alone or in collusion with other persons,' was the cause of the losses for which it made a claim to [the insurer], there is but one 'occurrence' and [the insurer] cannot be liable for indemnity in excess of $100,000.00." *Id.* Despite the fact that the plaintiff's losses were the result of two contracts with two different companies, "the losses resulted from one cause, i.e. the continued dishonesty of one employee." *Id.* (citing *Business Interiors, Inc. v. Aetna Casualty and Surety Co.*,

751 F. 2d 361, 363 (10th Cir. 1984). Similarly, Hartman's claim submission indicated that "Hanna Dallo, committed thefts and forgeries in collusion with several third-parties[,]." There is but one loss under the Policy due to the continued dishonesty of Dallo. *See* Def.'s Mot. for Summ. J., Ex. B.

Likewise, Hartman's interpretation of the Prior Loss provision in the Policy is misplaced. It is Hartman's contention that the Prior Loss Provision provides recovery for losses sustained prior to the inception of the current Policy. The Prior Loss Provision states:

> The insured shall neither be entitled to a separate recovery under each policy in force at the time any part of the prior loss was sustained, nor shall the Insured be entitled to recover the sum of the limits of liability of such policies. The Company's maximum liability for the prior loss shall not exceed the lesser of either the limit of liability of the policy immediately preceding this Coverage Section under which part of the prior loss was sustained, or the applicable Limit of Liability as set forth in the Declarations of this Coverage Section.

*Id.,* Ex. A, § VII. Both the Policy and Hartman's predecessor policies were subject to a $1,000,000.00 limit of liability. As such, under the plain terms of the Policy, Federal's maximum liability is $1,000,000.00. *See Dilley, Dewey & Damon, P.C.*, 1989 U.S. App. LEXIS 16185 at *4-5 (rejecting the insured's argument that the $25,000.00 policy limit applied to each policy year separately and concluding that the insured was not entitled to recover beyond the policy limit even though a portion of its loss was sustained in a prior, insured year.)

The Court will now address Hartman's Supplemental Brief Regarding New Evidence in Support of its Motion for Summary Judgment, filed on June 24, 2009. Hartman contends that it has recently discovered new evidence that three additional employees were involved in Dallo's scheme and contributed to the total loss suffered by Hartman. Hartman submits that Mr. Fakih, who has fled the country and has been in contact with Hartman, has indicated his desire to return to the United

States and face criminal charges. Mr. Fakih also told Hartman that certain employees, Tom CianCiolo, Dave Gaval, and Gary Foster were also involved in the embezzlement scheme. Hartman argues that should this Court accept Federal's interpretation of the Policy, then this new evidence, establishing that three additional employees were involved, would allow for additional payment on Hartman's claim because multiple limits are now payable as multiple losses are involved.

The Court first notes this new evidence is inadmissible hearsay, as well as unsupported by sufficient evidence, other than the statements of Fakih. Further, even if Hartman could provide verifiable documentary proof of these employees involvement in the embezzlement scheme, Hartman would not be entitled to any further recovery under the subject policy. As previously noted, the Policy states that Federal shall pay for direct loss "resulting from Theft or Forgery committed by an Employee acting alone or in collusion with others." *See* Hartman's Mot. for Summ. J., Ex. 13, Policy, Insuring Clause I.(A). "[A]ll loss resulting from a single act or any number of acts of the same Employee or Third Party . . . will be treated as a single loss and the applicable Limit of Liability of this Coverage Section will apply." *Id.* at VII(c). Whether these employees were also involved in the scheme is irrelevant as Dallo was the common element in every transaction of the embezzlement scheme.

In addition to seeking recovery for its loss, Hartman also seeks to recover expenses incurred when it retained an accounting firm, Doeren Mayhew & Company, to quantify its loss. While Insuring Agreement (J) provides coverage for certain expenses incurred in investigating a covered loss, coverage is limited to "Investigative Expenses" – which required "the Company's prior written consent to establish the existence and amount of a covered loss." *See* Def.'s Mot. for Summ. J., Ex. A, § II(r)). It is Federal's contention that Hartman is not entitled to these expenses because it did

not seek prior written approval from Federal. Hartman counters that Federal waived this requirement. In a January 4, 2008 letter to Hartman, David D. Pardini, indicated the following:

> Prior written consent should be sought immediately upon the Insured's consideration of retaining any outside firms or entities for these purposes. Although your correspondence of December 6, 2007 includes Doeren Mayhew's invoice (No. 12852) for $20,487.50 and Federal hereby now consents to their retention, the invoice does not include detailed entries "for the date [and] . . . a description of the work performed" as set forth in our letter of September 13, 2007. Please provide this for Invoice No. 12852 and any additional invoices for further services by Doeren Mayhew.

Plf.'s Mot. for Summ. J., Ex. 17, at 7-8. As such, there is no question that Federal waived the requirement of prior written consent and the only issue that remained was proper documentation of Hartman's expenses for Doeren Mayhew's investigation fees. Federal is mistaken in its assertion that Hartman conceded that it had no right to recoup its reasonable investigative expenses. Hartman's admissions state:

> 12. Hartman did not, prior to its retention of Doeren Mayhew & Company, seek Federal's consent to the retention of Doeren Mayhew & Company.
>
> RESPONSE: Admitted, however, Federal later approved or ratified the retention of Doeren Mayhew & Company and expressed no objections to the retention.
>
> 13. Federal did not consent to the retention and use of Doeren Mayhew & Company.
>
> RESPONSE: Denied. See response #12 above.

Def.'s Mot. for Summ. J., Ex. H. As such, Federal shall pay Hartman for its investigative costs upon Hartman's submission of proper documentation as discussed in Mr. Pardini's January 4, 2008 letter.

Hartman also maintains that it is entitled to penalty interest under MICH. COMP. LAWS § 500.2006 because Federal did not pay Hartman's claim within sixty (60) days from the date that

Hartman submitted its proof of loss. Under Michigan's Insurance Code, if an insurer does not pay benefits within sixty days after satisfactory proof of loss is received from the insured, then the insured is entitled to penalty interest at a rate of 12% per annum until payment is made. *See* MICH. COMP. LAWS § 500.2006(4). It is Hartman's contention that it submitted a sufficient proof of loss on October 18, 2007.

On September 13, 2007, Fidelity sent a letter to Hartman indicating that, while it did not have a standard 'Proof of Loss' form, it did require certain supporting documentation from an Insured seeking to recover under the Policy. *See* Def.'s Mot. for Summ. J., Ex. 14. Among the listed requirements were:

> 2.   An itemized claim specifying the exact amount of the loss being claimed and the basis for that amount; attaching copies of all supporting documentation, financials and the like, and an explanation of each document.
>
> *                              *                              *
>
> 4.   If an employee(s) is responsible for the claimed loss: The complete personnel record of the employee(s), including copies of employment applications . . . .

*Id.* at 7. Hartman admits that it did not submit the requisite copies of supporting documentation due to the amount of documentation (over fifteen bankers boxes). Ms. Dallo's personnel file was not submitted because of Hartman's obligations under Michigan law regarding employee confidentiality. "An insurer shall specify in writing the materials that constitute a satisfactory proof of loss not later than 30 days after receipt of a claim . . . ." MICH. COMP. LAWS § 500.2006(3). Federal submits that it specified in writing, within 30 days of receipt of Hartman's claim (received on August 29, 2007), that it informed Hartman of the requisite documentation for a satisfactory proof of loss. Hartman has not come forward with any evidence refuting this contention. Further, Hartman did not submit

the electronic data files underlying its loss calculation until January 25, 2008 and did not submit Ms. Dallo's personnel file until February 19, 2008. *See* Def.'s Mot. for Summ. J., Exs. H and G. Federal remitted its payment to Hartman on April 10, 2008, within sixty days after receipt of Dallo's file, or sufficient proof of loss substantiating Hartman's claim. As such, Hartman is not entitled to penalty interest as Federal complied with Michigan's Insurance Code by paying Hartman's claim within sixty days of a sufficient proof of loss.

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment [**Docket No. 12, filed on December 12, 2008**] is GRANTED in part and DENIED in part, granted as to Plaintiff's claim for investigative expenses and otherwise denied.

IT IS FURTHER ORDERED that Defendant's Motion for Summary Judgment [**Docket No. 14, filed on December 12, 2008**] is GRANTED in part and DENIED in part, granted as to all of Plaintiff's claims, except for the claim for investigative expenses.

IT IS FURTHER ORDERED that upon, submission of satisfactory documentation, Defendant remit $10,000.00 for investigation expenses to Plaintiff, within seven days from the date said documentation is provided.

IT IS FURTHER ORDERED that this cause of action is dismissed with prejudice.

               S/Denise Page Hood
               Denise Page Hood
               United States District Judge

Dated: September 28, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on September 28, 2009, by electronic and/or ordinary mail.

               S/William F. Lewis
               Case Manager